**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

In re W.R. Grace & Company, et al. :

State of New Jersey, Department Of Environmental Protection, : Civil Action No. 07-536

Appellants, : On Appeal from a Final Decision of the United States Bankruptcy Court District of Delaware Hon. Judith K. Fitzgerald

v.

W.R. GRACE & CO., : Bankruptcy Case No. 01-01139 Appeal Number 07-86

Appellees.

BRIEF OF APPELLANT STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, New Jersey 08625-0093
Attorney for Appellants
(609) 984-5016

Stuart B. Drowos (Bar 427)
Deputy Attorney General
Division of Revenue, Department of Finance
Carvel State Building
820 North French Street, 8th Floor
Wilmington, Delaware 19801
Local Counsel for State of New Jersey

Rachel Jeanne Lehr
John F. Dickinson
Deputy Attorneys General
On the Brief

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ISSUES PRESENTED ON APPEAL . . . . . . . . . . . . 3

STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENT

POINT I

THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, SHOULD BE ALLOWED TO FILE A LATE PROOF OF CLAIM BECAUSE IT WAS IMPOSSIBLE FOR THE STATE TO HAVE KNOWN IT HAD A CLAIM BEFORE THE BAR DATE . . . . . . . . . . . . . 11

POINT II

ISRA IMPOSES A SELF-EXECUTING DUTY TO REMEDIATE UPON CLOSURE, SALE OR TRANSFER OF CERTAIN POTENTIALLY POLLUTED PROPERTIES BUT IS INEFFECTIVE WITHOUT FULL AND HONEST DISCLOSURE OF THE USE AND PRESENCE OF HAZARDOUS SUBSTANCE . . . . . . . . . . . . . . . . . . . . . . . . 16

POINT III

A PENALTY ACTION IS WELL WITHIN THE POLICE POWER OF THE STATE AND IS EXEMPT FROM THE AUTOMATIC STAY . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**TABLE OF APPENDIX**

**PAGE**

**VOLUME I**

Order Denying Motion of the State of New Jersey, Department of Environmental Protection, For Leave to File a Late Proof of Claim . . . . . . . . . . . . 1a

Transcript of Proceedings for July 23, 2007 . . . . . . . . 2a-29a

Transcript of Proceedings April 2, 2007 . . . . . . . . . . 30a-40a

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . 41a-43a

Notice of Motion Seeking an Order to File Proof of Claim . . . . . . . . . . . . . . . . . . . . 44a-47a

Brief in Support of Motion Seeking Order to File a Late Proof of Claim . . . . . . . . . . . . . . . . . 48a-60a

Proof of Claim . . . . . . . . . . . . . . . . . . . . . 61a-88a

Debtor's Objection To The NJDEP'S Motion Seeking Permission to File a Late Proof of Claim . . . . . . . 89a-169a

Joinder Of The Official Committee Of Unsecured Creditors In The Debtors' Objection To The NJDEP's Motion Seeking An Order To File A Late Proof Of Claim . . . . . . . . . . . . . . . . 170a-171a

State of New Jersey's Response To Debtors' Objection To State's Motion . . . . . . . . . . . . . . . . . 172a-186a

Complaint For Declaratory And Injunctive Relief . . . . 187a-204a

Defendants' Notice Of Motion To Dismiss Debtors' Complaint For Declaratory And Injunctive Relief . . 205a-208a

Defendants' Brief in Support of Defendants' Motion To Dismiss Debtors' Complaint for Declaratory And Injunctive Relief and in Opposition to Debtors' Motion for an Injunction . . . . . . . . . . . . . . 209a-228a

Debtors' Motion For An Injunction Under Sections 105 And 362 Of The Bankruptcy Code . . . . . . . . . . . 229a-247a

Debtors' Opposition To Defendants' Motion To Dismiss . . . . . . . . . . . . . . . . . . 248a-264a

**VOLUME II**

Modified Order Regarding Debtors' Motion For An Injunction Under Sections 105 and 362 of the Bankruptcy Code . . . . . . . . . . . . . . . . . . . 265a-266a

Twelfth Order Regarding Debtor's Motion for an Injunction Under Sections 105 and 362 of the Bankruptcy Code . . . . . . . . . . . . . . . . . . . 267a-268a

Transcript of Proceedings of November 14, 2005 . . . . 269a-288a

Notice Of Removal . . . . . . . . . . . . . . . . . . . . 289a-297a

Complaint of the State of New Jersey v. W.R. Grace . . 298a-321a

Notice of Motion To Remand . . . . . . . . . . . . . . 322a-324a

Plaintiffs' Brief In Support Of Plaintiffs' Motion To Remand This Action To The Superior Court Of New Jersey Under 28 U.S.C. 1447(c), or 28 U.S.C. 1452 (b) . . . . . . . . . . . . . . . . 325a-351a

Plaintiffs' Brief In Reply To Defendants' Opposition To Plaintiffs' Motion To Remand This Action To Superior Court of New Jersey . . . . . . . . . . . . 352a-362a

Plaintiff's Brief in Opposition to Defendants' Motion to Transfer to Delaware Bankruptcy Court . . . . . . 363a-378a

Defendants' Brief In Opposition To Plaintiff's Motion To Remand . . . . . . . . . . . . . . . . . . . . . . 379a-399a

Letter In Support Of Motion To Transfer Venue . . . . . 400a-406a

Plaintiffs' Brief In Reply To Defendants' Opposition To Plaintiffs' Motion To Remand . . . . . . . . . . 407a-417a

Defendants' Brief In Opposition To Plaintiffs' Motion To Remand . . . . . . . . . . . . . . . . . . . 418a-438a

Notice Of Motion To Transfer Venue To The Delaware Bankruptcy Court . . . . . . . . . . . . . . . . . . . 439a-442a

Brief on Behalf of Defendants W.R. Grace & Co. and W.R. Grace & Co.-Conn. In Support of Motion to Transfer Venue to the Delaware Bankruptcy Court . . 443a-455a

Notice of Motion to Remand . . . . . . . . . . . . . . . . 456a-458a

Plaintiffs' Brief In Opposition To Defendants' Motion To Transfer To Delaware Bankruptcy Court . . . . . . . 459a-507a

**VOLUME III**

Preliminary Assessment/Site Investigation . . . . . . . . 508a-767a

Negative Declaration Affidavit . . . . . . . . . . . . . . 768a-769a

## TABLE OF AUTHORITIES

**PAGE**

CASES CITED

Cumberland Farms, Inc., v. Florida Department of Environmental Protection, 116 F.3d 16 (1st Cir. 1997) 24

Dixon Venture v. Dixon Crucible Company, 122 N.J. 228, 584 A.2d 797 (1991) . . . . . . . . . . 16

I/M/O Cadgene Family Partnership, 286 N.J. Super. 270, 279, 669 A.2d 239, 244 (App. Div. 1995) . . . . . . . . . 7

In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 461, 608 A.2d 288, 298 (1992) . . . . . . . . . . . . . . . . . 16

In re Enron Corp, No. 01-16034, 2003 Bankr. LEXIS 2113, (Bankr. S.D.N.Y., September 23, 2003) . . . . . . . . . . 13

In re Garay, 89 N.J. 104, 444 A.2d 1107 (1982) . . . . . . . . 23

Matter of Kimber Petroleum Corp., 110 N.J. 69, 88, 539 A.2d 1181 (1988) . . . . . . . . . . . . . . . . . . . 17

In the Matter of Perona Brothers, Inc., 186 B.R. 833 (D.N.J. 1995) . . . . . . . . . . . . . . . . . 3

Midlantic Nat'l Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 505, 106 S. Ct. 755, 761-62, 88 L.Ed.2d 859 (1986) . . . . . . 22

Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993) . . . . . . . . . 11

State of New Jersey, Department of Environmental Protection v. Madison Industries, 161 B.R. 363 (D.N.J. 1993) . . . . 4

Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 62-65, 522 A.2d 1025, 1034-36 (App. Div. 1987), certif. dismissed, 126 N.J. 308, 598 A.2d 872 (1991) . . . . . . . . . . . . 18

Torwico Electronics, Inc., v. State of New Jersey, Department of Environmental Protection and Energy, 153 B.R. 24 (D.N.J. 1992) . . . . . . . . . . . . . . . . 3

United States v. Nicolet, Inc., 857 F.2d 202, 210 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . 23

STATUTES CITED

28 U.S.C. 1452(a) . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . 2

N.J.S.A 13:1K-13.1(a)(4) . . . . . . . . . . . . . . . . . . 19

N.J.S.A. 13:1D-139 . . . . . . . . . . . . . . . . . . . . . 17

N.J.S.A. 13:1K-12 . . . . . . . . . . . . . . . . . . . . . . 5

N.J.S.A. 13:1K-6 -13 . . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 13:1K-6 to 13 . . . . . . . . . . . . . . . . . . . 16

N.J.S.A. 13:1K-7 (1983) . . . . . . . . . . . . . . . . . . 17

N.J.S.A. 13:1K-8 . . . . . . . . . . . . . . . . . . 4, 5, 17

N.J.S.A. 58:10-23.11 . . . . . . . . . . . . . . . . . . . . 8

N.J.S.A. 58:10-23.11u . . . . . . . . . . . . . . . . . . . 19

REGULATIONS CITED

N.J.A.C. 7:26E . . . . . . . . . . . . . . . . . . . . . . . 6

RULES CITED

Fed. R. Bankr. P. 9006(b)(1) . . . . . . . . . . . . . . . . 11

OTHER AUTHORITIES

Block, Michael K., Optimal Penalties, Criminal Law and The Control of Corporate Behavior, 71 Boston University Law Review 395, 397 (1991) . . . . . . . . . . . . . . . . 24

Cordry, Karen, Debtor's Obligation to Obey The Law And The Government's Role in Bankruptcy Courts, National Association of Attorneys General, Washington, D.C. . . . . 24

PRELIMINARY STATEMENT

This appeal arises from a final decision of the Bankruptcy Court (Hon. Judith K. Fitzgerald, U.S.B.J.) denying the motion of the State of New Jersey, Department of Environmental Protection ("State" or "Department"), for leave to file a late proof of claim. In concluding that it would be prejudicial to the debtor to allow the State to file this claim for a penalty incurred by the debtor for submitting false information to the Department and certifying under penalty of law to its truth, the Court did not take into account that the debtors' own actions prevented the State from knowing it had a claim before the bar date or for years afterward. If ever there was a case of "unclean hands" on the debtor's part, this is it. The debtor failed both to truthfully acknowledge the historic operations at the Hamilton Plant in its false report, and it failed to sample for the presence of asbestos at the site, deciding instead to present and certify to a misleading picture of the site operations and conditions. These misrepresentations caused the Department to issue "no further action" letters that allowed the debtors to move on without disclosing that the site was seriously contaminated with asbestos.

The debtor's contentions that the State "knew" or "should have known" because the Department was copied on documents from the EPA dealing with contamination found at the site, when the Department receives hundreds of such documents daily, are just

Grace's attempt to distract the Court from the real issues. It does not follow, from being copied among dozens of others, that the Department should immediately have jumped to the conclusion that Grace had submitted false information to the Department about the hazardous condition of the site.

Simply put, the debtor had certified under oath to the following on two different documents that allowed it to obtain no further action letters from the Department:

> I certify under penalty of law that I have personally examined and am familiar with the information submitted herein and all attached documents, and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the submitted information is true, accurate and complete. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information, and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute I am personally liable for the penalties. (Aa520; Aa769)[1]

Neither the Bankruptcy Code nor the Bar Date should provide a haven for debtors from the consequences of submitting false documents to a governmental entity. The State should be allowed to file this penalty claim.

JURISDICTIONAL STATEMENT

Jurisdiction of the District Court over this matter arises pursuant to 28 U.S.C. § 158(a) as it is an appeal from a

---

[1] "Aa" cites are to Appellant's Appendix.

final judgment of the Bankruptcy Court, and the Bankruptcy Court had jurisdiction over this Chapter 11 bankruptcy pursuant to 28 U.S.C. § 157. In the Matter of Perona Brothers, Inc., 186 B.R. 833 (D.N.J. 1995); Torwico Electronics, Inc., v. State of New Jersey, Department of Environmental Protection and Energy, 153 B.R. 24 (D.N.J. 1992).

STATEMENT OF THE ISSUES PRESENTED ON APPEAL

1. Whether the Bankruptcy Court erred in denying the State's motion to file a late proof of claim for a penalty on the grounds of "excusable neglect," even though at the time of the March 31, 2003, bar date the State had no way of knowing that in 1995 the debtor had certified to false information as to asbestos contamination present at the debtor's Hamilton, New Jersey vermiculite exfoliation plant, and had submitted the certification and false information to the Department.

2. Whether the Bankruptcy Court erred in denying the State's motion to file a late proof of claim, as prejudicial to the debtor, even though the debtor did not and does not have a confirmed Plan and could not demonstrate any prejudice.

3. Whether the Bankruptcy Court erred in denying the State's motion to file a late proof of claim considering the totality of the circumstances, which included the fact that the debtor, W.R. Grace, had sworn to false information about the contamination at the site, and the State had no way of knowing about this

falsification before the bar date.

4. Whether the Bankruptcy Court erred in not taking into consideration the seriousness of W.R. Grace's violations of the law and W.R. Grace's own duplicity in causing the claim to be filed late.

STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's legal conclusions are subject to plenary review, and its finding of facts are scrutinized under a clearly erroneous standard. Torwico Electronics, Inc., v. State of New Jersey, Department of Environmental Protection and Energy, 153 B.R. 24 (D.N.J. 1992); State of New Jersey, Department of Environmental Protection v. Madison Industries, 161 B.R. 363 (D.N.J. 1993).

STATEMENT OF THE CASE

W.R. Grace ("Grace") operated a Vermiculite processing plant, located in Hamilton Township, Mercer County, New Jersey ("the Plant"). This plant is an "industrial establishment" as that term is defined at N.J.S.A. 13:1K-8 of the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 -13. ISRA was enacted in 1983 for the purpose of preventing private businesses from forcing the public to bear the expense of cleaning up abandoned plant sites contaminated with hazardous wastes. In pursuance of this goal, ISRA provides that, upon the closure, sale or transfer of an industrial establishment, the owner or operator of the industrial

establishment must either submit a cleanup plan to the Department detailing the measures necessary to detoxify the property, or obtain a "negative declaration" from the Department that there has been no discharge of hazardous substances or wastes or that any such discharge has been cleaned up in accordance with procedures approved by the Department and there remain no hazardous substances or wastes on the property. N.J.S.A. 13:1K-8. (Aa768-Aa769). By the express terms of the statute, compliance with ISRA "constitute[s] [a] continuing regulatory obligation ... imposed by the State." N.J.S.A. 13:1K-12.

The Plant was in operation for approximately 44 years (1950 to 1994). For many of those years, the Plant manufactured asbestos-containing insulating material and soil supplements made from a concentrated, asbestos-laden vermiculite ore primarily mined from Grace's Libby, Montana mine. The insulating material and soil supplements were made by expanding (exfoliating) the concentrated vermiculite ore. Grace also manufactured other asbestos-containing products at the Plant, including, but not necessarily limited to, a fire protection product known as Monokote 1, which, prior to 1970, contained 13 percent asbestos by weight.

Despite the history of asbestos usage at the Hamilton Plant, the Preliminary Assessment/Site Investigation ("PA/SI") required by ISRA to be certified to and submitted to the Department essentially declared that no sampling of the soil was necessary

because Grace did not use asbestos-containing materials at the Plant. (Aa508-Aa769). In that regard, Grace represented that the vermiculite processed at the Plant did not have an asbestos content of more than one percent by weight, which is the regulatory threshold for asbestos-containing materials. The Negative Declaration stated that any hazardous substances that had been discharged at the Plant had been remediated in accordance with the Department's Technical Requirements for Site Remediation, N.J.A.C. 7:26E. Both the PA/SI and the Negative Declaration were certified by Mr. Bettacchi and Mr. Burrill, who were Grace employees at the time, as accurate.

Grace closed the Hamilton Plant in 1994, triggering ISRA. Thus, it was incumbent upon Grace to conduct a PA and an SI for the Hamilton Plant, and if necessary, a Remedial Investigation ("RI"). If an RI was necessary and revealed the existence of hazardous substances or hazardous wastes at the Hamilton Plant, Grace was required to prepare a Remedial Action Work Plan ("RAWP") and to submit it to the Department for approval and eventual implementation.

The submission of true, accurate and complete documents is the cornerstone of the ISRA program. Indeed, New Jersey's Superior Court, Appellate Division, in reviewing a matter involving blatant misrepresentations in a Negative Declaration submitted to the Department pursuant to ISRA's predecessor statute, the

Environmental Cleanup Responsibility Act ("ECRA"), said:

> The purpose of ECRA, and now ISRA, is to remedy the "legacy of hazardous waste" left after decades of industrial activity. [citation omitted] The owner or operator of an industrial facility at the time of the transaction triggering the statute is bound by a "self-executing duty to remediate." [citation omitted]. The program is dependent on accurate and complete submissions to DEP by owners and operators.

I/M/O Cadgene Family Partnership, 286 N.J. Super. 270, 279, 669 A.2d 239, 244 (App. Div. 1995).

In sum, most of New Jersey's environmental laws, including ISRA and its predecessor, ECRA, are self-reporting, and the Department must be able to depend upon the truth of what is reported. There is nothing more fundamental to the protection of the public health, safety and environment than the submission of truthful and accurate documents by the members of the regulated community.

As a result of the representations made by Grace and certified by Bettacchi and Burrill, the Department issued No Further Action letters, which meant no cleanup was necessary, for the Plant in August and November 1995. Nothing further occurred at the Plant until the United States Environmental Protection Agency ("USEPA") began to investigate certain vermiculite exfoliation plants across the United States that had received large amounts of concentrated vermiculite ore from the Libby, Montana mine. In or about October 2000, the USEPA sampled the Plant and its

surroundings.   An analysis of soil samples revealed significant concentrations of asbestos in the soil at the Plant and its environs.   Though the EPA sampling took place in 2000, the Department did not become aware of the contamination until in or about the Fall of 2003, when it was asked by the New Jersey Department of Health and Senior Services to comment on a draft Health Assessment for the Plant. At that time, DEP representatives were unaware that the Plant had previously been in the ISRA program because the health assessment referred to the Plant as the "Zonolite" plant.   DEP had no such plant in its data base.   By 2003, the extent of the contamination, which in some samples was as high as 40 percent by weight, was delineated and excavation activities began.     Approximately 15,000 tons of asbestos-contaminated soil have been removed from the Plant environs.

On June 1, 2005, the Department filed suit against W.R. Grace & Co. and W.R. Grace Co.-Conn. ("Grace"), Bettacchi, and Burrill (collectively, "Defendants") seeking civil penalties pursuant to ISRA and the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq.  (Aa65-Aa88).  The State action seeks civil penalties against the Defendants for false statements and misleading information contained in the PA/SI and the Negative Declaration filed with the Department.  By the time Grace's violations of the law were discovered by the State, the bar date for filing a proof of claim, which had been March 31, 2003,

had passed.

On September 19, 2005, W.R. Grace filed a complaint in the Bankruptcy Court for Declaratory and Injunctive Relief, clearly giving all involved with the bankruptcy notice of the action against Grace in State court. (Aa187-Aa208). During oral argument at a hearing as part of that adversary proceeding, counsel maintained that Grace would seek to have the Bankruptcy Court adjudicate this penalty. (Aa272) There seemed, therefore, at that time no need to file a proof of claim until the Department had a judgment. In addition, at this same time the Court issued a temporary stay on the State's action. (Aa269-Aa287). Almost the entire argument by Grace on November 14, 2005, was an attempt to convince the Court that an action to assess a penalty for supplying false information to the Department was not a police power action, which of course it is. The Court did not decide the issue on November 14, 2005, just as the New Jersey District Court made no decisions on the removal that could be appealed in this case, but temporarily stayed the State action and asked the parties to discuss settlement for a few months and then come back. (Aa287). It was not appropriate with a temporary stay in place to file a motion seeking to file a late proof of claim.

On September 19, 2005, the State court action had been improperly removed to Federal District Court, something that cannot be done in relation to a police power action. (Aa289-Aa297). On

October 6, 2005, the State filed a motion to remand that is still pending in the District Court of New Jersey, along with Grace's motion to Transfer the Case to the Delaware Bankruptcy Court, filed on October 3, 2005. (Aa325-Aa351; Aa400-Aa406). With everything stayed, the State should not be expected to file a motion for a late proof of claim, with penalties far from being fixed.

In accordance with the direction of the Bankruptcy Court, during 2006, the State attempted to reach an amicable conclusion to this matter. That required the development of a settlement position, which was delayed due to a change in Administration, the resignation of the Attorney General and the appointment of a new Attorney General. Unfortunately, settlement proved to be impossible because the parties could not reach a meeting of the minds as to what the penalty should be. When the State realized that, this motion for a late Proof of Claim became inevitable. (Aa44-Aa88). Oral argument was held on July 23, 2007 (Aa2-Aa29) and on August 2, 2007, the Court entered an order denying the motion. (Aa1).

LEGAL ARGUMENT

POINT I

THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, SHOULD BE ALLOWED TO FILE A LATE PROOF OF CLAIM BECAUSE IT WAS IMPOSSIBLE FOR THE STATE TO HAVE KNOWN IT HAD A CLAIM BEFORE THE BAR DATE.

Fed. R. Bankr. P. 9006(b)(1) provides that when an act is required to be done within a certain amount of time:

> the Court for cause shown can at any time in its discretion....(1) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of "excusable neglect."

The leading case on the issue of "excusable neglect" is Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993). In Pioneer, a lawyer representing a group of creditors filed a motion seeking an Order allowing him to file a late proof of claim. The attorney's excuse was that there had been upheaval in his law firm, he left the firm and did not have the file with the correspondence notifying him of the bar date in it. He had other excuses, which the Court gave much more weight to, like the fact that the notice of the bar date was included in the letter announcing the date and time of the Section 341 meeting, instead of in a separate document, thereby easier to overlook. The motion was granted and appealed and reversed and appealed until it reached the Supreme Court where the

Court upheld the motion to file a late proof of claim under the excusable neglect criteria.

The Court found that Congress, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. 507 U.S. at 389. The determination of what kind of neglect would be considered "excusable" is an equitable one, the Court opined, taking account of all relevant circumstances surrounding a party's omission. These include the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the creditor, and whether the creditor acted in good faith. Id.

The State's failure to file a proof of claim for the State action falls squarely within the confines of the "excusable neglect" doctrine as enunciated in Pioneer, though it hardly seems to be "neglect" when there was no way that the Department could have known of the claim before the bar date, since the Department did not know of the violation at that time. Perhaps "intervening circumstances" beyond the State's control would be more to the point.

In re Enron Corp, No. 01-16034, 2003 Bankr. LEXIS 2113, (Bankr. S.D.N.Y., September 23, 2003) is an unpublished decision but the case is directly on point. In Enron, the creditors claimed that they failed to file timely claims before the bar date because the information necessary to determine they had any claim against the debtors regarding meter reading data errors was withheld by the debtors until after the bar date. This is much like the Department's case here, where the Department was unaware that Grace had submitted false information until well after the bar date.

The Enron Court found that the creditor was entitled to file late proofs of claim based on excusable neglect, pursuant to Fed. R. Bankr. P. 9006(b)(1). The court found that there was no significant prejudice to the debtors because the debtors had not filed a disclosure statement or plan of reorganization, and that allowing the late claim would not have a disruptive effect upon the debtors' proposed plan. Id at *22. Citing Pioneer Inv. Services, supra, the Enron Court found that in permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

Grace clearly falls within the four corners of the Enron case. Grace has submitted its First Amended Plan of Reorganization but it has not been confirmed, there is no date set for a confirmation hearing, and there has been no Disclosure Statement as yet. Most of the factors regarding whether there will be prejudice to the debtor depend on how near a plan of reorganization is to confirmation. Id. at *20. Although not absolutely certain, the State believes that estimation hearings for asbestos claims have not been completed as yet, so debtors do not know the sum total of the claims in any event. Debtors have known about our claim since June 1, 2005, so there is not any undue surprise.

In Enron, no disclosure statement had been filed nor had a plan been confirmed. The court found that allowing that claim would not open the flood gates for similar claims, since the circumstances were unique. Id. So too are the facts here: there has been no disclosure statement, the plan has not been confirmed, and the facts are unique.

Indeed, this debtor has extended the bankruptcy proceedings for years (since 2001, almost seven years), filing ten motions for an extension of the exclusivity period. On July 23, 2007, upon the objection of the United States Trustee, the Court denied the debtor's motion for a tenth extension of the exclusivity period, pointing out that while $17,000,000 had been paid to the debtors' counsel in a single three month period, no creditor had

been paid anything (Aa26).    Thus Grace can hardly be heard to complain that it would be prejudiced by the State's filing of a late proof of claim.

POINT II

ISRA IMPOSES A SELF-EXECUTING DUTY TO REMEDIATE UPON CLOSURE, SALE OR TRANSFER OF CERTAIN POTENTIALLY POLLUTED PROPERTIES BUT IS INEFFECTIVE WITHOUT FULL AND HONEST DISCLOSURE OF THE USE AND PRESENCE OF HAZARDOUS SUBSTANCES

The Environmental Cleanup Responsibility Act ("ECRA"), now the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 to 13, was enacted in 1983 for the purpose of relieving the public from bearing the burden of remediating industrial sites contaminated with hazardous substances and abandoned by private businesses that, deciding to cease their operations, just "walk away from the scene." See, Dixon Venture v. Dixon Crucible Company, 122 N.J. 228, 584 A.2d 797 (1991), or "dump and run." See In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 461, 608 A.2d 288, 298 (1992). In order to achieve this goal, ISRA provides that, upon the closure, sale or transfer of an industrial establishment, the owner or operator of the industrial establishment must either submit a cleanup plan to the Department detailing the measures necessary to detoxify the property, or obtain approval from the Department of a "negative declaration" in which the owner or operator has ***certified*** that there has been no discharge of hazardous substances or wastes or that any such discharge has been cleaned up in accordance with procedures approved by the Department and there remain no hazardous substances or wastes on the

property.  N.J.S.A. 13:1K-8.

"Industrial establishments" are those:  (1) at which hazardous substances or wastes are present; and (2) which also have a designated reference number as determined by the North American Industrial Classification System of Codes.  N.J.S.A. 13:1D-139. The Hamilton Plant is an industrial establishment subject to the provisions of ISRA.

The magnitude of New Jersey's hazardous waste problem is beyond dispute.  Matter of Kimber Petroleum Corp., 110 N.J. 69, 88, 539 A.2d 1181 (1988) (Wilentz, C.J. dissenting).  Decades of industrial activity have left this state with a legacy of hazardous waste.  That legacy continues to threaten the State's public health and ecology.  In Re Adoption of N.J.A.C. 7:26B, supra, 128 N.J. at 446, 608 A.2d at 290.  Thus, in enacting ECRA, the Legislature recognized that the generation, handling, storage and disposal of hazardous substances and wastes pose an inherent risk of harm, and that the closing of operations and the transfer of real property where hazardous substances were used must be conducted in a rational and orderly way so as to mitigate potential risk. N.J.S.A. 13:1K-7 (1983).  ISRA is quite unlike other environmental regimes in that it uses market forces to bring about the reversal of environmental pollution.  Dixon Venture, supra, 122 N.J. 228, 584 A.2d 797.  Although ISRA does not impose an independent duty to clean up the property during a period of operation, the owner

cannot walk away from the scene after deciding to cease operations without developing and implementing a cleanup plan. Id. Furthermore, ISRA was designed to impose upon both the owner and the operator of an industrial establishment a "self-executing duty to remediate" upon closure, sale or transfer of certain potentially polluted properties. See Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 62-65, 522 A.2d 1025, 1034-36 (App. Div. 1987), certif. dismissed, 126 N.J. 308, 598 A.2d 872 (1991).

In order to facilitate the completion of commercial transactions, the Department had adopted a practice under which a property owner may proceed with the sale of a site before fulfilling its obligations under ISRA by entering into a Remediation Agreement or an Administrative Consent Order with the Department. See Dixon Venture, supra, 122 N.J. at 233, 584 A.2d at 800. This procedure has been recognized by the Supreme Court as a means of avoiding "draconian" application of ISRA, specifically, allowing a transfer of ownership of the industrial establishment to proceed, while insuring that the owner will not "dump and run" from contaminated property. In Re Adoption of N.J.A.C. 7:26B, supra, 128 N.J. at 461, 608 A.2d at 298. Thus, Grace would not have been prevented from closing the Hamilton Plant prior to completion of any required remediation.

ISRA authorizes the Commissioner of the Department to

bring an action for a civil penalty not to exceed $25,000 per day against persons knowingly making a false statement, representation or certification in any application record, or other document filed or required to be maintained by ISRA.  N.J.S.A 13:1K-13.1 (a)(4).

The Spill Act, too, expressly prohibits, among other things, giving or causing to be given false information, N.J.S.A. 58:10-23.11u, and authorizes the assessment of a penalty of $50,000 per day for such a violation.   The State penalty action clearly involves critical issues of public health, safety and the environment.

POINT III

A PENALTY ACTION IS WELL WITHIN THE POLICE POWER OF THE STATE AND IS EXEMPT FROM THE AUTOMATIC STAY

Although the debtor will no doubt immediately argue that this issue is not before the court, just as the debtor did at oral argument in the Bankruptcy Court (Aa19, Line 6), the debtor itself inserted the issue into this proceeding in the first paragraph of its objection to the State's motion to file a late proof of claim, claiming that the complaint filed by the State was a violation of the automatic stay. (Aa89). What could be more within the police power of the State than to punish a violator of the law?

The State action was initiated to penalize Grace for what the Department believes were blatant misrepresentations in the PA/SI report and the Negative Declaration. (Aa64-Aa88). Those misrepresentations led to a threat to the public health, safety and environment that lasted almost 10 years. Dishonesty in any submission means that the Department may be unaware of adverse environmental conditions and exposure scenarios that negatively impact upon public health and safety. That is particularly true here because Grace's operation of the Plant involved the manufacture of asbestos-containing products. Asbestos is an extremely dangerous substance. The intake of airborne asbestos fibers causes asbestosis and other crippling lung diseases and often leads to death. Thus, it was extremely important for Grace

to have accurately advised the Department of the nature of its operations at the Plant, which occurred for almost 50 years, and the extent of any possible asbestos contamination. The importance of that task is evident from the fact the Plant is surrounded by residential communities. Additionally, a document shredding business leased the former exfoliation plant after the Department issued No Further Action letters based on Grace's PA/SI report and its Negative Declaration for the Plant.

The State action was initiated not to protect any pecuniary interest the State may have in Grace's property, but to deter Grace and companies like Grace and their responsible officers and employees from endangering the health and safety of the citizens of New Jersey through the submission of false or misleading documents to the Department.

The State civil penalty action falls within the clear and unambiguous language of the police power exemption from the automatic stay provision of §362(a) provided by §362(b)(4) of the Bankruptcy Code and the exclusion to the removal provisions of 28 U.S.C. 1452(a). As such, the State penalty action is not subject to removal pursuant to 28 U.S.C. §1452(a). Accordingly, the Grace defendants' removal of the State penalty action to the United States District Court was improper, and the State penalty action should be remanded to the New Jersey Superior Court, Law Division. (Aa322-Aa351).

The deterrence value of penalties is a necessary aspect of the enforcement of environmental laws. Virtually every environmental law has penalty provisions to deter ongoing contamination and the refusal to clean up existing contamination. Statutes imposing cleanup obligations on private parties are effective precisely because they impose substantial penalties on those who do not comply. Thus, as Chief Judge Garrett E. Brown, Jr., of the District of New Jersey has ruled, "statutory penalties 'give teeth' to environmental laws." State of New Jersey, Department of Environmental Protection v. Madison Industries, Inc., 161 B.R. 363, 366 (D.N.J. 1993). In order to deter violations effectively, penalties must impose a greater expense upon the violator than the cost of operating within the law. This becomes even more important when the operator is under financial pressure that increases the temptation to avoid the expenditures required to comply with the law. But in this matter, the violators of the law are saving a fortune because the Court will not let the State file a late proof of claim. The debtor's violations of the law are being rewarded.

More than two decades ago, the Supreme Court in Midlantic Nat'l Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 505, 106 S. Ct. 755, 761-62, 88 L.Ed.2d 859 (1986), recognized the critical importance Congress assigned to the "goal of protecting the environment against toxic pollution." 474 U.S.

at 505. The concern as it has been repeatedly expressed by Congress is that "the trustee is not to have carte blanche to ignore nonbankruptcy law." 474 U.S. at 505. "Congress did not intend for the Bankruptcy Code to pre-empt all state laws." Ibid. This Congressional intent is reflected in Section 959(b) of the Code, which commands the trustee to "manage and operate the property in his possession ... according to the requirements of the valid laws of the State." Ibid. Penalties are an essential part of the scheme envisioned by Congress, because they are a necessary part of "the valid laws of the State" since they provide a meaningful way of deterring violation of those laws. To prevent the State from filing this claim goes against all the intentions of Congress not to make Bankruptcy Court a haven for wrongdoers.

The case law on penalties is legion and usually deals with whether they should be paid as an administrative expense or not, but in none of this case law is it suggested that assessing a penalty or litigating to fix the penalty is a violation of the automatic stay. See United States v. Nicolet, Inc., 857 F.2d 202, 210 (3d Cir. 1988) (holding that the entry of a money judgment, even without enforcement of that judgment, interjects "a valuable deterrence element" into a statutory scheme, making it plain that such actions fall within the category related to police or regulatory powers of the State); In re Garay, 89 N.J. 104, 444 A.2d 1107 (1982)(finding by the New Jersey Supreme Court that an action

to fix damages for violation of medicaid fraud statutes was not stayed by physician's filing of petition for bankruptcy); Cumberland Farms, Inc., v. Florida Department of Environmental Protection, 116 F.3d 16 (1st Cir. 1997)(finding no compelling basis existed for reducing $200,000 penalty assessed by bankruptcy court for debtor's violation of Florida's environmental protection laws; and penalty was properly accorded administrative expense status).

The best known way of enforcing laws to protect the public health and safety is through the assessment of penalties. A debtor's legal obligations to society as a whole should not be subordinated to the particular interest of his creditors.   See, Cordry, Karen, Debtor's Obligation to Obey The Law And The Government's Role in Bankruptcy Courts, National Association of Attorneys General, Washington, D.C. (1994).

Further, optimal penalty theory requires that fines be set at a level that fully reflects the costs to society of a prohibited activity engaged in by an economic agent -- either an individual or a firm.   Society must impose penalties on these entities, because, otherwise, these entities would force society to bear the cost of the harms that result from their engaging in a prohibited activity.    Block, Michael K., Optimal Penalties, Criminal Law and The Control of Corporate Behavior, 71 Boston University Law Review 395, 397 (1991).    Optimal fines force economic agents to internalize the total cost of their activities.

For the very reason that this matter is exempt from the automatic stay, removing it to District Court from State Court is improper. The same factors that exempt it from the automatic stay prevent this enforcement action by the State from being subjected to removal. But here it is, withering away before three courts for over two years, the Superior Court of New Jersey, the District Court of New Jersey, and the Bankruptcy Court of Delaware.

CONCLUSION

For the foregoing reasons, the State of New Jersey, Department of Environmental Protection, respectfully requests that this Court grant its motion to file a Proof of Claim for $31,035,577 in this matter.

Respectfully submitted,

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY

By: [signature]
Rachel Jeanne Lehr
Deputy Attorney General

/S/ Stuart B. Drowos
Stuart B. Drowos (Bar 427)
Deputy Attorney General
Division of Revenue, Department of Finance
Carvel State Building
820 North French Street, 8th Floor
Wilmington, Delaware 19801

Local Counsel for State of New Jersey

Dated: November 2, 2007