IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

In re W.R. Grace & Company, et al. :

State of New Jersey, Department : Civil Action No. 07-536
Of Environmental Protection,
: On Appeal from a Final
    Appellants, Decision of the United
: States Bankruptcy Court
    v. District of Delaware
: Hon. Judith K. Fitzgerald
W.R. GRACE & CO.,
: Bankruptcy Case No. 01-01139
    Appellees. Appeal Number 07-86

---

REPLY BRIEF OF APPELLANT STATE OF NEW JERSEY,
DEPARTMENT OF ENVIRONMENTAL PROTECTION

---

                ANNE MILGRAM
                ATTORNEY GENERAL OF NEW JERSEY
                Richard J. Hughes Justice Complex
                25 Market Street
                PO Box 093
                Trenton, New Jersey 08625-0093
                Attorney for Appellants
                (609) 984-5016

                Stuart B. Drowos (Bar 427)
                Deputy Attorney General
                Division of Revenue, Department of Finance
                Carvel State Building
                820 North French Street, 8th Floor
                Wilmington, Delaware 19801
                Local Counsel for State of New Jersey

Rachel Jeanne Lehr
John F. Dickinson, Jr.
Deputy Attorneys General
   On the Brief

**TABLE OF CONTENTS**

**PAGE**

ARGUMENT

    THE COURT BELOW HAS SUBVERTED THE SELF
    EXECUTING DUTY IMPOSED BY THE NEW JERSEY
    INDUSTRIAL SITE RECOVERY ACT TO FULLY
    DISCLOSE ENVIRONMENTAL CONDITIONS AT ITS SITE
    AND IMPROPERLY REVERSED THE BURDEN OF PROOF
    IMPOSED UPON THE OWNER AND OPERATOR OF AN
    INDUSTRIAL ESTABLISHMENT AND IMPROPERLY
    PLACED THIS BURDEN UPON THE DEPARTMENT
    INSTEAD . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

**PAGE**

CASES CITED

In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 448,
    608 A.2d  288, 291 (1992) citing
    Superior Air Products Co. v. N.L. Industries, Inc.,
    216 N.J. Super. 46, 63-65, 522 A. 2d 1025
    (App. Div. 1987), certif. dismissed, 126 N.J.
    308, 598 A.2d 872. . . . . . . . . . . . . . . . . . . 3

In re William Stoecker, 179 F.3d 546, 552
    (7th Cir. 1999),  affirmed May 30, 2000,
    sub nom Raleigh v. Illinois Dept. of Revenue,
    530 U.S. 15; 120 S. Ct. 1951; 147 L. Ed. 2d 13;
    2000 U.S. LEXIS 3623 . . . . . . . . . . . . . . . . 1, 2, 6

Pioneer Investment Services Co. v. Brunswick Associates
    Limited Partnership, 507 U.S. 380 (1993) . . . . . . . . . 9

STATUTES CITED

N.J.S.A. 13:1K-12 . . . . . . . . . . . . . . . . . . . . . 3

N.J.S.A. 13:1K-6 to -13 . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

THE COURT BELOW HAS SUBVERTED THE SELF EXECUTING DUTY IMPOSED BY THE NEW JERSEY INDUSTRIAL SITE RECOVERY ACT TO FULLY DISCLOSE ENVIRONMENTAL CONDITIONS AT ITS SITE AND IMPROPERLY REVERSED THE BURDEN OF PROOF IMPOSED UPON THE OWNER AND OPERATOR OF AN INDUSTRIAL ESTABLISHMENT AND IMPROPERLY PLACED THIS BURDEN UPON THE DEPARTMENT INSTEAD.

The Bankruptcy Court below has subverted the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 to -13, which depends on full disclosure, and has reversed the burden of proof found in that statute by placing the burden of proof on the Department of Environmental Protection ("Department" or "DEP") because the responsible party is in bankruptcy. (Aa9-Aa12). The United States Supreme Court has said that this cannot be done, that it is wholly improper. See In re William Stoecker, 179 F.3d 546, 552 (7th Cir. 1999), affirmed May 30, 2000, sub nom Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15; 120 S. Ct. 1951; 147 L. Ed. 2d 13; 2000 U.S. LEXIS 3623 (Judge Richard A. Posner opined in the 7th Circuit opinion that was affirmed by the Supreme Court, that to shift the burden of proof, as the trustee argued in that case, "would create a new incentive to declare bankruptcy. We have enough bankruptcies." 179 F.3d at 552). Ironically, Stoecker also involved a penalty claim filed years late by a government unit. It was a penalty for a tax claim relating to the purchase of a boat out of state, that the government unit also could not have known about because the debtor had never registered the boat in question.

So, there was no way for the taxing authority to have known about the tax due at the proper time. The Seventh Circuit allowed the late claim to be filed.

The Bankruptcy Court here has impermissibly interfered with New Jersey's regulatory scheme, and upholding this decision would thwart the legislative purpose of ISRA to impose a self executing duty to remediate and prevent an owner and operator from "dumping" on land and into the waters of the State and then "running" as Grace did here. "Such a rearranging of the equities has a particular appeal for those bankruptcy judges who would like to administer the bankruptcy laws in accordance with their personal notions of fairness. The bankruptcy judge, however, has no authority to do so." Id. at 550. Here, the Bankruptcy Court has reversed the burden of proof and has imposed it on the Department, i.e., the Department must prove that each of the thousands of certifications submitted to the Department is true, at the time the Department receives notice that the owner or operator of an industrial establishment is in bankruptcy. That is wrong. The burden of proof does not change just because the responsible party is in bankruptcy. The burden of proof does not shift under any circumstances because one is in bankruptcy.

By the express terms of the statute, compliance with ISRA "constitute[s] [a] continuing regulatory obligation ... imposed by the State." N.J.S.A. 13:1K-12. ISRA imposes a 'self executing

duty to remediate.'" See In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 448, 608 A.2d 288, 291 (1992) citing Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 63-65, 522 A. 2d 1025 (App. Div. 1987), certif. dismissed, 126 N.J. 308, 598 A.2d 872; 1991 N.J. LEXIS 346 (1991).

>In Superior Air Products, the court said:
>
>> . . . under [IS]RA there is no reason to compel DEP to expend its limited resources in investigating or evaluating the responsible party. The public interest should be vindicated by the [IS]RA proceeding which should assure the cleanup. [216 N.J.Super. at 64, 522 A. 2d at 1035].

The imposition of a "self-executing duty to remediate" is the key issue here, and it includes the duty to disclose the truth about the condition of the property, rather than to falsify conditions to avoid the necessary remediation as Grace has done here. The Bankruptcy Court has missed the main point of ISRA entirely in its single-minded unwavering concern for the "prejudice" of the debtor, never considering what this debtor has done to the environment and to the health and safety of the public.

As debtor cites in its brief at page 9, the Bankruptcy Court believed the Department had an obligation to investigate and find the falsely certified statements when the Department saw that it was listed among the creditors in the bankruptcy papers. The Bankruptcy Court does not understand that the Department does just that when it sees that it is listed as a creditor and makes sure

-3-

that the debtor does not owe the Department various fees or oversight costs. ISRA cleanups, however, are not "claims." Yet, almost every single debtor lists the Department whether they actually think the Department has a claim or not. In this case, Grace may have listed DEP for any of their various contaminated sites in New Jersey, although counsel for Grace and the State had been through this at another site back in 2001 and Grace learned that obligations to remediate contaminated sites were not claims. Nevertheless, at oral argument on July 23, 2007, the Court asserted:

> THE COURT: Well, the debtor says that you were listed in New Jersey - not you, I apologize, that New Jersey was listed as a creditor and identified as having a contingent disputed and unliquidated claim.
>
> MS. LEHR: Debtors do this all the time, Your Honor. We do not consider -
>
> THE COURT: But that's what -
>
> MS. LEHR: No -
>
> THE COURT: - puts you on notice.
>
> MS. LEHR: No. We don't - Oh, but we had no claim. No we knew about the bar date. We knew we were listed, in fact, I've had this very argument with Ms. Baer years ago because we have case law, the <u>Torweka</u> (phonetical) (sic) case of the Third Circuit under ISRA, where there's no alternate payment, no alternate right of payment, that is not a claim. It is the debtors' obligation to comply. In this case they had financial assurance which we used to clean up the site that we were interested in in 2001. So, whatever we had left after that, other ISRA cases, I don't know whether we had them or not because we had no problems with Grace over them. They are not claims.
>
> THE COURT: But then, you have a claim. You're filing a claim for civil penalties.

-4-

> MS. LEHR: - but we had no reason to think that Grace had done anything that would warrant a penalty back at the time of the bar date.
>
> **THE COURT: But that's what getting notice of a bankruptcy requires you to do. It requires the creditor who gets the notice to investigate the claim. That's the purpose for listing the creditor in the bankruptcy schedule.** (emphasis added).
>
> MS. LEHR: But that is not the claim, Your Honor, that they listed us for. They listed us because they thought we—because of their contaminated sites.
>
> THE COURT: Well, it's the same thing. You're -
>
> MS. LEHR: No, it isn't, Your Honor.
>
> THE COURT: Claiming a penalty because of the -
>
> MS. LEHR: A cleanup - A remediation we do not consider a claim, it's injunctive relief. We do not file proof of claim -
>
> THE COURT: No, I'm sorry -
>
> MS. LEHR: - for remediation.
>
> THE COURT: Yes, I understand, I'm sorry. I did not understand that the schedules listed the claim as a remediation claim. Is that what it says?
>
> MS. LEHR: It did - I don't remember what it said, but certainly wasn't for this penalty because we didn't know about the penalty. They wouldn't have admitted to the penalty back then.
>
> . . . .
>
> MS. LEHR: I mean, they didn't come to us and say, we lied. We swore to facts that weren't true, you'd better file a proof of claim.
>
> THE COURT: If they list the appropriate agency as having, I guess, an unidentified - pardon me, disputed, unliquidated, and contingent claim, if that's all it says, **there is a duty to investigate what that claim is.** (Aa9 to Aa11)(emphasis added).

This colloquy goes on for pages and it is clearly the Bankruptcy Court switching the burden of proof from the debtor to

-5-

the Department to certify to truth of information submitted to the Department pursuant to ISRA to check every certification in case the debtor lied and the State has a penalty action. This is absurd. The result thus reached is incorrect as a matter of law, see In re William Stoecker, supra, is unsound as a matter of policy, and should be reversed. Bankruptcy is not supposed to give violators of the law a safe haven. Here, the Bankruptcy Court has gone to any length to protect the debtor. This is not the purpose of the Bankruptcy Code. The purpose of the Bankruptcy Code as well as the purpose of ISRA is being subverted by the Court. The opinion below impermissibly transfers the burden of proof under ISRA from the debtor to the State in Bankruptcy Court.

In its Brief, Grace continually misstates that the State knew of its claim. No matter how many times Grace says that, it does not make it so. Grace must believe that the more often it repeats the same misstatement of fact, the more likely that sooner or later these misstatements will be accepted as true. Nor does it matter how much money ($4,000,000) Grace spent on making the bar date public knowledge. The State never denied knowing the bar date. It denies knowing of the claim.

Grace makes much of the fact that DEP personnel were copied on an internal EPA Action Memorandum. The copied staff had nothing to do with the ISRA program. It is a long leap to assert that a DEP staff member who had nothing to do with ISRA and who was

-6-

copied on a document from one EPA staff member to another, read the document, understood what it meant, and knew that the responsible party swore to false statements. Nor did the State make any mistake of law as Grace asserts. The State, out of necessity, made the mistake of taking Grace's signed and certified statements under penalty of law as true. The Bankruptcy Court below is allowing Grace to blatantly violate the law and then profit from that violation. Grace's history is one of violating the law and covering it up, of poisoning the land and the people and they must not be allowed to do it again, here.

At best, the State first learned of this possible violation in the fall of 2003, when the Department of Health and Human Services asked Department staff to comment on a draft health assessment of the site. This was six months after the bar date. The EPA Action Memorandum back in 2002 did not ring any bells with anyone who might have seen it—nor should it have made anyone think that Grace certified to the truth of the false information it had submitted to the Department in 1995. It was only in the fall of 2003, when asked to comment on a health report, that someone looked up Grace's ISRA history to see what had been done at the Hamilton Plant and why a contaminated site had eluded remedial action at that time. That resulted in a lengthy investigation and in a complaint being filed 18 months later. That is not an inordinate amount of time considering the need to uncover what Grace had hidden and to

get to the truth.

As far as the present motion to file a late proof of claim, there did not seem to be a need to file one if the Department were going to litigate to establish liability as was the purpose of the complaint. But because of the actions of the debtor to improperly stop the litigation, and the refusal of the courts involved to even issue an appealable order, the State penalty matter is in limbo with a stay put upon it by the Bankruptcy Court. Any attempt to settle among the parties came to a dead end. Thus, finally, the filing of the proof of claim without any further delay.

It is difficult to see how allowing this claim would be prejudicial to the estate (Grace's Response Brief at 9), when it is now five months after the Order below, and there is still no confirmed plan of reorganization. Now, like then, the estimation hearings have not been completed. Finally, on July 23, 2007, for the first time, the Court denied the debtor's tenth motion for the continuation of the exclusivity period. In fact, a competing plan has been filed by the asbestos claimants. Many expenses in this Bankruptcy, including counsel fees, will likely be as large or larger than any penalty ultimately assessed.

The penalty amount that Grace asserts the State seeks in the State Penalty Action is simply not true. See Grace Brief at 7. So is their characterization of the penalty in footnote 2, beginning on page 6. The complaint states no amount for the penalty sought,

and the Proof of Claim that the State is seeking to file is for $31,000,000, which, while a good solid amount, does not begin to approach $800,000,000. This is but one easily checked misstatement of fact made by Grace throughout its brief, even after knowing perfectly well that the Proof of Claim that the State is seeking to file is clearly for $31,000,000.

Nowhere does the Bankruptcy Court even entertain the idea that perhaps Grace should not have certified to false information in the first place as important as this information is to the environment and the public health and safety. The Bankruptcy Court only holds the State responsible for not knowing of Grace's false testimony before the bar date!

Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), does not contemplate a case where the debtor successfully hid its violation from the State and then cried "too late" when it found out. When Grace talks about "floodgates" opening if the State's claim were allowed it suggests a flood of violations that Grace knows about and is afraid will somehow come to light prompting a "flood" of late proofs of claim.

For the Bankruptcy Court to expect the DEP to investigate the truth of every statement certified to be true on every one of thousands of certifications submitted to the Department by a responsible party who later files for bankruptcy, no matter how much later, is ludicrous. It is reversing the entire process. The State

is supposed to be able to depend upon the certifications of persons under oath, the entire environmental process depends upon it. The Bankruptcy Court is switching the burden of proof and putting the burden on the department to prove that every certification is true. The burden of proof does not change just because the responsible party is in bankruptcy. It is inconceivable that either Congress or the Supreme Court intended for the Bankruptcy Code to be used to condone Grace's certification of false information and to allow Grace to get away not only with that but with leaving contamination at the site to make people ill as they have all over the United States, but then to shift the burden of proof from Grace to tell the truth, to the Department to discover Grace's lies in time to file a proof of claim. The Supreme Court has explicitly ruled against that.

CONCLUSION

For all of the foregoing reasons, the State of New Jersey, Department of Environmental Protection, asks this Court to reverse the decision below and allow the State to file a late Proof of Claim.

        Respectfully submitted,

        ANNE MILGRAM
        ATTORNEY GENERAL OF NEW JERSEY


By: *Rachel Jeanne Lehr*
    Rachel Jeanne Lehr
    Deputy Attorney General


    /S/ Stuart B. Drowos
    Stuart B. Drowos (Bar 427)
    Deputy Attorney General
    Division of Revenue
    Department of Finance
    Carvel State Building
    820 North French Street, 8th Floor
    Wilmington, Delaware 19801

    Local Counsel for State of New Jersey